IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CITIZENS DEFENDING FREEDOM, et. al., § § § | |
| Plaintiffs, § § | Civil Action No. 4:24-cv-00585-O |
| v. § § | |
| ARLINGTON INDEPENDENT SCHOOL DISTRICT, et al., § § § | |
| Defendants. | |

### MEMORANDUM OPINION & ORDER

Before the Court are Defendants Arlington Independent School District and Superintendent Matt Smith's (collectively, "Defendants") Motion for Summary Judgment, Brief, and Appendix (ECF Nos. 52–54); Plaintiffs Citizens Defending Freedom and David Jarvis's (collectively, "Plaintiffs") Response Brief and Appendix (ECF Nos. 61–62); and Defendants' Reply (ECF No. 64). Having considered the parties' briefing and the applicable law, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**I.   BACKGROUND[1]**

This lawsuit was initially brought in state court under the Texas Open Meetings Act ("TOMA"). It was later removed to this Court, based on the addition of federal claims that Defendants Arlington Independent School District ("AISD") and Superintendent Matt Smith ("Superintendent Smith") retaliated against Plaintiff David Jarvis for engaging in protected speech. For clarity, the Court separates the events giving rise to Plaintiffs' TOMA and retaliation claims.

---

[1] The Court's recitation of facts is taken from the summary judgment briefing.

### A. Plaintiffs' TOMA Suit

On July 29, 2021, Governor Greg Abbott issued Executive Order GA-38 ("GA-38"). GA-38 prohibited school districts from imposing COVID-19 regulations, such as mask mandates. In response to GA-38, then-Superintendent of AISD, Marcelo Cavazos, instructed AISD's legal counsel to begin drafting a lawsuit challenging the executive order.

Then-Board President, Kecia Mays, discussed the potential lawsuit with Justin Chapa, an attorney and fellow Board of Trustees ("Board") member. Mays did not discuss this matter with any other members of the Board. In preparation, Mays worked with Cavazos to arrange an emergency Board meeting. Mays enlisted the help of Lisa Benjamin, Cavazos's administrative assistant, to reach out to the remaining Board members regarding their availability for the meeting.

On August 12, 2023, Benjamin texted Board members to organize an emergency meeting for the next day. The text message did not contain any information regarding the agenda of the meeting, nor did the members discuss any business in these messages. On the morning of August 13, 2021, Benjamin informed the Board members that the emergency meeting would occur at 3:00 PM that day. Public notice of the emergency meeting was posted at 10:00 AM. At 2:15 PM, Benjamin contacted the Board members to inform them that the emergency meeting was cancelled.

Later that afternoon, AISD announced the Board would consider the potential lawsuit on another date, August 19, 2023. AISD published a news release that clearly stated the date, time, and place in which the Board would meet to discuss the lawsuit. The meeting was ultimately held on August 19, 2023. There, Trustee Aaron Reich confirmed that he was unaware of the potential lawsuit until the prior week and that it was not discussed by the Board as a body. The Board voted 5-2 not to pursue the lawsuit.

On January 19, 2024, Plaintiffs filed this lawsuit in state court alleging that Defendants violated TOMA.

### B. Plaintiffs' Retaliation Suit

Relatedly, Jarvis, an AISD parent and taxpayer, was utilizing administrative channels to advocate changes to AISD policies and procedures. Jarvis represents that he filed 18 formal grievances with AISD between November 2022 and March 2024. These grievances requested, among other things, clarifications to AISD's grievance procedures. Some—but not all—of those grievances made it to a Level Four hearing before the Board of Trustees.

One of those hearings occurred on February 22, 2024, after Plaintiffs filed this lawsuit alleging TOMA violations. Following the Level Four hearing, the Board dismissed Jarvis's grievance and directed the Board's counsel to prepare a written opinion for consideration at the next regularly scheduled Board meeting on March 21, 2024. At that meeting, the Board adopted the written opinion, titled *In re David Jarvis*, which the Board directed be immediately appended to Board Policy GF (Local).

*In re David Jarvis* served to clarify AISD's grievance policy. Essentially, a grievance submitted to the Board must "[e]xplain specifically how [the grievant was] harmed or injured" and cannot concern "matters that affect the individual no differently than the public at large."[2] Board Policy GF (Local) was amended to clarify that the grievance process is used "to decide actual cases and controversies" and "is not the place for a party to obtain an 'advisory opinion.'"[3]

---

[2] Defs.' App. Supp. Mot. Summ. J. (*In re Jarvis*), App. 208, ECF No. 54-1 (first alteration in original).
[3] *Id.* (GF (Local)), at App. 217, ECF No. 54-2.

After the Board clarified GF (Local) in *In re David Jarvis*, Superintendent Smith and Chief Talent Officer Scott Kahl dismissed six more of Jarvis's grievances. They provided written explanations for each of these dismissals, citing *In re David Jarvis*, among other reasons.

Plaintiffs then amended their state court petition to add retaliation claims under federal law, and Defendants removed to this Court.[4] At the motion to dismiss stage, the Court disposed of several of Plaintiffs' claims.[5] Four claims survived, namely, that Defendants (1) violated TOMA; (2) acted ultra vires; (3) retaliated against Jarvis in violation of the First Amendment; and (4) violated Jarvis's right of remonstrance under the Texas Constitution.[6] Defendants now move for summary judgment on these claims.[7] The parties have briefed the issues, and the Motion is ripe for review.

## II. LEGAL STANDARD

A movant is entitled to summary judgment if by the pleadings and evidence it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.*

A party seeking summary judgment must inform a court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue

---

[4] *See* Defs.' Notice of Removal, ECF No. 1.
[5] *See generally* Order Mot. Dismiss, ECF No. 39.
[6] *Id.*
[7] Defs.' Mot. Summ. J., ECF No. 52.

4

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must then set forth specific facts showing that there is a genuine issue for trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968).

### III.    ANALYSIS

Defendants move for summary judgment on all claims.[8] First, Defendants argue that Plaintiffs cannot prove their TOMA claim, which also prevents Plaintiffs from succeeding on their ultra vires claim.[9] Second, Defendants assert there is no evidence suggesting that the Board or Superintendent Smith retaliated against Jarvis in violation of the First Amendment.[10] And third, Defendants maintain that Plaintiffs cannot prove Jarvis was denied his right of remonstrance under the Texas Constitution because the Board gave all his grievances some amount of consideration.[11]

Plaintiffs respond that their TOMA claim survives because Defendants attempted to circumvent public meetings by texting about the GA-38 lawsuit and because Defendants did not provide proper notice of the meeting.[12] Plaintiffs then argue their ultra vires claim survives because Cavazos acted without legal authority when he requested AISD counsel begin drafting a lawsuit.[13] Plaintiffs further assert their First Amendment claim survives because there is a "temporal proximity" between the dismissal of Jarvis's grievances and the initiation of this lawsuit.[14] Finally,

---

[8] Defs.' Br. Supp. Mot. Summ. J. 1–2, ECF No. 53.
[9] *Id.*
[10] *Id.* at 2.
[11] *Id.*
[12] Pls.' Resp. 6–7, ECF No. 62.
[13] *Id.* at 8.
[14] *Id.* at 9–12.

Plaintiffs dispute that Defendants did not "stop, look, and listen" to Jarvis's remonstrance as required under the Texas Constitution.[15]

For the reasons explained below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### A. Plaintiffs' TOMA Claim

Regarding Plaintiffs' TOMA claim, Defendants move for summary judgment on three grounds: (1) Plaintiffs cannot prove an actual TOMA violation; (2) Plaintiffs' TOMA claim is moot; and (3) AISD retains immunity from Plaintiffs' TOMA suit.[16] Plaintiffs respond that their TOMA claim survives because Defendants attempted to circumvent public meetings by texting about the GA-38 lawsuit and because Defendants did not provide proper notice of the meeting.[17] Plaintiffs also argue their TOMA claims are not moot, because they fall under the "capable of repetition yet evading review" doctrine.[18] Lastly, Plaintiffs assert that Defendants cannot claim immunity because TOMA waives immunity for injunctive relief, the remedy Plaintiffs seek.[19] The Court agrees with Defendants that Plaintiffs cannot prove an actual violation of TOMA and does not reach Defendants' other arguments.

After the Court dismissed two of three TOMA claims at the motion to dismiss stage, Plaintiffs' sole TOMA claim is that Defendants conducted district business outside of a properly noticed meeting.[20] Defendants argue that Plaintiffs' claim fails because two Board members do not constitute a "quorum" of a government body to trigger TOMA's requirements.[21] Plaintiffs do

---

[15] *Id.* at 12.
[16] Defs.' Br. Supp. Mot. Summ. J. 7–12, ECF No. 53.
[17] Pls.' Resp. 6–7, ECF No. 62.
[18] *Id.* at 7–8.
[19] *Id.* at 8.
[20] Pls.' Second Am. Compl. 20–21, ECF No. 28.
[21] Defs.' Br. Supp. Mot. Summ. J. 9–10, ECF No. 53.

6

not dispute, as a factual matter, that only two Board members discussed a potential lawsuit challenging GA-38. Rather, they advance a new legal theory based on a different section of TOMA, which they argue "prohibits 'series of communications' designed to circumvent public meeting requirements, regardless of whether a formal quorum convenes."[22]

TOMA is designed "to enable public access to and to increase public knowledge of government decision making." *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). As such, TOMA requires that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE § 551.002.

TOMA defines a "meeting" as "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." *Id.* at § 551.001(4)(A). A "deliberation" is defined as a "verbal or written exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body." *Id.* at § 551.001(2). "'Quorum' means a majority of a governmental body, unless defined differently by applicable law or rule or the charter of the governmental body." *Id.* at § 551.001(6).

Here, there is no genuine issue of fact as to whether a "majority" of the Board had verbal communications outside of a properly designated meeting—it did not. There were seven members on the AISD Board of Trustees.[23] Two of these members, Mays and Chapa, discussed the potential

---

[22] Pls.' Resp. 6, ECF No. 62.
[23] Defs.' App. Supp. Mot. Summ. J. (Jarvis Dep.), App. 18, ECF No. 54-1.

lawsuit.[24] Two of seven is plainly not a majority of the Board of Trustees. Further, Plaintiffs readily admit that other Board members were not aware of the potential lawsuit prior to the agenda of the August 19 meeting being announced.[25] Therefore, there was no "quorum of a governmental body" discussing the GA-38 lawsuit prior to the meeting on August 19, 2023. *Id.* at § 551.001(4)(A).

On the other hand, Plaintiffs argue that a quorum is not required, citing to a different provision of the Texas Government Code than the one pled in Count 3 of their Second Amended Complaint.[26] *See* TEX. GOV'T CODE § 551.143. Whether the evidence supports a claim under § 551.143—or whether the Court even has jurisdiction to enforce § 551.143[27]—it is well settled that a plaintiff may not defeat summary judgment by asserting new legal theories for the first time in response. *See Freeman v. Continental Gin Company*, 381 F.2d 459, 469–70 (5th Cir. 1967) ("Much of the value of summary judgment . . . would be dissipated if a party were free to rely on one theory in an attempt to defect a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory."); *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

Likewise, Plaintiffs cannot for the first time in response assert that "Benjamin's August 12, 2023, texts to schedule an emergency meeting lacked the required 72-hour notice and agenda, violating Section 551.045."[28] Nor could Plaintiffs prove a violation of § 551.045, because

---

[24] *Id.* (Mays Aff.), at App. 52.
[25] Pls.' Resp. 6–7, ECF No. 62.
[26] *Id.*
[27] Because § 551.143 is punishable by a misdemeanor, it is a criminal statute, and not a private right of action enforceable in this civil case.
[28] *Id.* at 7.

"emergency" meetings require only one-hour notice, and the Board gave the public five-hours.[29] TEX. GOV'T CODE § 551.045(a).

In sum, because there was no quorum, an open meeting was not required under § 551.002, and Plaintiffs cannot defeat summary judgment by asserting new claims under § 551.045 and § 551.143 for the first time in response. Accordingly, Defendants' Motion is **GRANTED** as to Plaintiffs' TOMA claim.

### B. Plaintiffs' Ultra Vires Claim

Plaintiffs' surviving ultra vires claim relies on their assertion that Defendants "continue to act in violation of the law, specifically the TOMA."[30] Defendants assert that because Plaintiffs' TOMA claim fails, so does their ultra vires claim.[31] The Court agrees with Defendants.

Moreover, Plaintiffs assert a new theory of liability. Whereas their Second Amended Complaint alleges that the individual Trustees acted ultra vires,[32] their briefing now asserts that former Superintendent Cavazos "acted without authority by directing the GA-38 lawsuit without Board approval."[33] Even if this were not a new theory, Plaintiffs have not identified a single statutory provision that Cavazos violated. Instead, they argue in a cursory fashion that "[c]ourts sustain ultra vires claims for transparency violations,"[34] citing to a case that does not exist and another that is inapposite.[35] Because Plaintiffs fail to establish a basis in which a defendant acted without legal authority, their ultra vires claim fails.

Accordingly, Defendants' Motion is **GRANTED** as to Plaintiffs' ultra vires claim.

---

[29] Defs.' App. Supp. Mot. Summ. J. (Notice of August 13, 2021, Meeting), App. 92 (advertising meeting at 3:00 PM), App. 95 (certificate of notice posted at 10:00 AM.), ECF No. 54-1.
[30] Pls.' Second Am. Compl. 21–22, ECF No. 28.
[31] Defs.' Br. Supp. Mot. Summ. J. 12, ECF No. 53.
[32] Pls.' Second Am. Compl. 21, ECF No. 28.
[33] Pls.' Resp. 8, ECF No. 62.
[34] *Id.*
[35] *See* Defs.' Reply 9, n. 36, ECF No. 64.

### C. Plaintiffs' First Amendment Claims Under § 1983

The premise of Plaintiffs' § 1983 claim asserting a First Amendment violation on the part of Defendants AISD and Smith is that they dismissed Jarvis's grievances in retaliation for filing this lawsuit and issued *In re David Jarvis* to target Jarvis's "advocacy style."[36] Defendants move for summary judgment on the basis that Superintendent Smith is entitled to qualified immunity and AISD is not municipally liable.[37] The Court agrees with Defendants.

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). First Amendment retaliation actions are properly raised under 42 U.S.C. § 1983, which provides a private cause of action against those who, under color of law, deprive a citizen of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

#### 1. Superintendent Smith's Qualified Immunity

Defendants argue that Superintendent Smith is entitled to qualified immunity because Plaintiffs cannot establish a constitutional violation that was clearly established.[38] Plaintiffs argue that Superintendent Smith violated clearly established First Amendment law by "systematically dismissing grievances from a vocal critic immediately after that critic filed a federal lawsuit."[39] Because the law is not clearly established that Superintendent Smith acted unconstitutionally, Plaintiffs do not overcome quality immunity.

The doctrine of qualified immunity protects government officials sued under 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly

---

[36] Pls.' Second Am. Compl. 25–27, ECF No. 28; Pls.' Resp. 9, ECF No. 62.
[37] Defs.' Br. Supp. Mot. Summ. J. 12–30, ECF No. 53.
[38] *Id.* at 13–27; Defs.' Reply 11–14, ECF No. 64.
[39] Pls.' Resp. 10, ECF No. 62.

established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The first prong asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong asks whether that right was clearly established at the time of the government official's alleged misconduct. *Id.* A court "can analyze the prongs in either order or resolve the case on a single prong." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (citation omitted). "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Id.*

Because Plaintiffs cannot show that Superintendent Smith violated clearly established law, the Court only addresses that prong. Plaintiffs argue that "[t]he right to petition government without retaliation was clearly established" at the time Superintendent Smith dismissed Jarvis's grievances.[40] But this articulation of the law is too broad for the clearly established prong. The law must be framed "with specificity and granularity," *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019), for "[t]he dispositive question is whether the violative nature of particular conduct is clearly established." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). "The plaintiff must identify controlling precedent that makes the unlawfulness of the officer's conduct sufficiently clear that a reasonable officer would have understood his conduct violated that right." *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 495 (5th Cir. 2021).

---

[40] *Id.* at 10.

Plaintiffs cite no authority even remotely establishing the violative nature of Superintendent Smith's conduct. Several of Plaintiffs' cases do not even stand for the propositions they claim they do.[41] In any event, Defendants submit several non-retaliatory reasons for the dismissal of Jarvis's grievances,[42] so the temporal proximity between Jarvis's filing of this lawsuit and Superintendent Smith's dismissals is not enough to establish a retaliatory motive. The Court therefore finds that Superintendent Smith did not violate any clearly established law. Accordingly, Defendants' Motion is **GRANTED** as to Plaintiffs' § 1983 claim against Superintendent Smith.

### 2. AISD's Municipal Liability

Defendants argue that Plaintiffs cannot establish municipal liability because there is no underlying constitutional violation, and certainly not one attributable to a policy or custom adopted by the Board.[43] Plaintiffs respond that "[t]he Board of Trustees, Arlington ISD's final policymaker, directly caused the constitutional violation through its adoption of *In re David Jarvis*."[44] The Court agrees with Defendants that there was no constitutional violation of Jarvis's First Amendment rights and does not address whether there was a policy or custom.

"Municipalities can be held liable for violating a person's constitutional rights under § 1983." *Est. of Bonilla ex rel. Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). The Fifth Circuit has stated that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted . . . (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) (quoting

---

[41] Defs.' Reply 11–12, 20–21, ECF No. 64.
[42] Defs.' Br. Supp. Mot. Summ. J. 16–22, ECF No. 53.
[43] *Id.* at 14–30.
[44] Pls.' Resp. 11, ECF No. 62.

*Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). "[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability imposed on the [defendant]." *Id.*

Plaintiffs' Response is misdirected towards establishing AISD's municipal liability, while failing to establish the underlying constitutional violation. At best, Plaintiffs argue that "[t]he Board's March 21, 2024 adoption of *In re David Jarvis* redefined Board Policy GF (Local) to exclude Jarvis's advocacy-style grievances, requiring 'unique harm akin to judicial standing.'"[45] And "*In re David Jarvis* was explicitly designed to prevent Jarvis's grievances from reaching Level Four hearings."[46] But Plaintiffs fail to establish, as a matter of law, why this amounts to a constitutional violation.

There is no *unfettered* First Amendment right to petition the government. In *Smith v. Arkansas State Highway Employees*, the Supreme Court affirmed procedures that allowed a public employer to bypass a union and only hear grievances from members directly. 441 U.S. 463, 464–66 (1979). It explained that "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, . . . to recognize [a union] and bargain with it." *Id.* at 465. Conversely, in *Minnesota State Board for Community Colleges v. Knight*, the Supreme Court upheld a law that gave a union the exclusive right to participate in "meet and confer" sessions with the college administration, while excluding non-union faculty members. 465 U.S. 271, 273–90 (1984). The Supreme Court held that the non-union faculty members had "no constitutional right as members of the public to a government audience for their policy views," nor did they have a "special constitutional right" as public employees "to a voice in the making of policy by their government employer." *Id.* at 286.

---

[45] *Id.*
[46] *Id.*

Both cases stand for the proposition that the Constitution does not require government officials to listen to or meet with any particular person or group. Indeed, a government body may restrict the class of persons to whom it will listen in its making of policy. So here, it was within AISD's right to issue *In re David Jarvis* and incorporate it into its official policy, thereby limiting the filing of generalized grievances. *See Knight*, 465 U.S. at 285 ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.").

Plaintiffs cannot establish a genuine factual dispute that *In re David Jarvis*, combined with the subsequent dismissals of Jarvis's grievances, were retaliatory. Not only is the reasoning in *In re David Jarvis* entirely consistent with Supreme Court precedent on the right to petition, Jarvis *invited* the decision by asking AISD to clarify whether a "taxpayer is allowed to use the public complaint/grievance process to request that AISD fairly evaluate any proposed amendments to AISD policy."[47] And AISD subsequently made *In re David Jarvis* its official policy.[48] So Jarvis is hard-pressed to claim that AISD retaliated against him in doing so.

Defendants also present evidence that the Board meaningfully engaged with each of Jarvis's grievances.[49] That is, each of his grievances underwent review, and after each was dismissed, Jarvis was provided an appeal in which the Board reviewed its prior decision.[50] Jarvis is simply not entitled to the level of review of his choice or even to have his policy preferences vindicated by AISD. *Smith*, 441 U.S. at 464–65 ("The First Amendment right to associate and to

---

[47] Defs.' App. Supp. Mot. Summ. J. (Jarvis's Public Complaint Form), App. 292, ECF No. 54-2.
[48] *Id.* (GF (Local)), at App. 217.
[49] *Id.* (Dismissal of Post-Decision Grievances), at App. 407–14.
[50] *Id.*

14

advocate provides no guarantee that a speech will persuade or that advocacy will be effective." (internal quotation marks and citation omitted)).

Therefore, Jarvis's constitutional rights were not violated when AISD dismissed his grievances, nor were they violated when AISD clarified its grievance policy in its *In re David Jarvis* decision. Accordingly, Defendants' Motion is **GRANTED** as to Plaintiffs' § 1983 claim against AISD.

### D. Plaintiffs' Remonstrance Claims

Defendants argue that Plaintiffs cannot sustain a remonstrance claim against AISD or Superintendent Smith because both afforded Jarvis access to the Board through written grievances, open meetings, and individual meetings.[51] Defendants further assert that Plaintiffs cannot sustain their remonstrance claims against Superintendent Smith because the statute applies to elected officials, which Superintendent Smith is not.[52] Plaintiffs respond that the Board and Smith violated Jarvis's right of remonstrance because they "systematically dismiss[ed] Jarvis's grievances post-lawsuit without meaningful review."[53] The Court agrees with Defendants. Both AISD and Superintendent Smith afforded Jarvis his right of remonstrance. Because the Court is persuaded by Defendants' first argument, the Court declines to address their second argument.

Under the Texas Constitution, the right of remonstrance provides that "[c]itizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance." TEX. CONST. art. I, § 27. Texas courts have held that for a board to accommodate this right, it "must stop, look, and listen." *Corpus Christi Independent School Dist.*

---

[51] Defs.' Br. Supp. Mot. Summ. J. 30–33, ECF No. 53.
[52] *Id.* at 32.
[53] Pls.' Resp. 12, ECF No. 62.

*v. Padilla*, 709 S.W.2d 700, 704 (Tex. App.—Corpus Cristi–Edinburg, 1986, no writ.) (quoting *Pro. Ass'n of Coll. Educators v. El Paso Cnty. Cmty. Dist.*, 678 S.W.2d 94, 96 (Tex. App.—El Paso 1984, writ ref'd n.r.e.)). But there is "no requirement that those trusted with the powers of government must negotiate or even respond to complaints filed by those being governed." *Id.* "Article I, § 27 only guarantees citizens access to the government's ear." *Id.*

Plaintiffs fail to provide evidence or establish as a matter of law that AISD or Superintendent Smith denied his right of remonstrance. Jarvis contests the dismissal of six of his grievances without a Level Four hearing.[54] "[W]hile the government must 'consider' the petition or grievance, it does not have an affirmative duty to provide a grievance procedure for citizens to vent their complaints." *Id.* Therefore, Jarvis was not entitled to a Level Four hearing. Moreover, AISD and Superintendent Smith not only "consider[ed]" Jarvis's grievances but gave him explanations for dismissing them.[55] Superintendent Smith "stop[ped], look[ed], and listen[ed]" to Jarvis's grievances personally for a duration of two hours at a Level Three hearing, and then issued a substantive response to each of those grievances.[56] *Id.* Therefore, AISD and Superintendent Smith did more than what was required of them under the Texas Constitution.

Accordingly, Defendants' Motion is **GRANTED** as to Plaintiffs' remonstrance claims against AISD and Superintendent Smith.

---

[54] Pls.' App. Supp. Resp. (Jarvis Dep.), App. 3, ECF No. 62-1.
[55] Defs.' App. Supp. Mot. Summ. J. (Dismissal of Post-Decision Grievances), App. 407–14, ECF No. 54-2.
[56] Pls.' App. Supp. Resp. (Four Grievances Consol. Hr'g), App. 30, ECF No. 62-1; Defs.' App. Supp. Mot. Summ. J. (Dismissal of Post-Decision Grievances), App. 407–10, ECF No. 54-2.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment is **GRANTED**. All of Plaintiffs' claims are **DISMISSED with prejudice**. The Court shall issue a final judgement.

**SO ORDERED** on this **27th day** of **August, 2025.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**